**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                           Case No. 3:97-cr-001-TJC-JBT

QUENTON A. THOMPSON

_____/

## ORDER ON MOTIONS TO REDUCE SENTENCE

Defendant Quenton Thompson moves to reduce his sentence under Section 404 of the First Step Act and 18 U.S.C. § 3582(c)(1)(A) (the "compassionate release" statute). (Doc. 167, Renewed First Step Act Motion; Doc. 171, Motion for Compassionate Release.) The government responded to both motions. (Doc. 170, Response to Renewed First Step Act Motion; Doc. 174, Response to Motion for Compassionate Release.) The parties have also filed several supplemental briefs, which the Court has considered. (Docs. 176, 184 (Defendant's supplemental briefs on compassionate release); Doc. 193 (Defendant's supplemental brief on Renewed First Step Act Motion); Docs. 177, 185 (government's supplemental briefs on compassionate release); Doc. 192 (government's supplemental brief on Renewed First Step Act Motion).)

Defendant is a 47-year-old inmate incarcerated at Jesup FCI, serving a 660-month total term of imprisonment for crack-cocaine and gun offenses, including two stacked sentences under 18 U.S.C. § 924(c) for aiding and

1

abetting the use or carrying of a firearm in relation to a drug trafficking crime. (Doc. 180, Second Amended Judgment.) Defendant has been imprisoned for over 25 years for these offenses, which he committed when he was 19 years old. According to the Bureau of Prisons (BOP), he is not scheduled to be released until March 6, 2044. Defendant moves for a sentence reduction under § 3582(c)(1)(A) because of the COVID-19 virus and his medical conditions, which include Type 2 diabetes, hypertension, obesity, and possible liver and heart issues. He also moves to reduce his sentence under the First Step Act based on retroactive changes to the penalties for crack cocaine offenses. See First Step Act, Pub. L. No. 115–391, 132 Stat. 5194 (2018).

## I.  Section 3582(c)(1)(A)

A district court "may not modify a term of imprisonment once it has been imposed," except under certain circumstances defined by statute. 18 U.S.C. § 3582(c). One of those exceptions is § 3582(c)(1)(A), which provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[1] The Eleventh Circuit instructs that U.S.S.G. § 1B1.13 is the applicable policy statement for all § 3582(c)(1)(A) motions, and that "a district court cannot grant a motion for reduction if it would be inconsistent with the [Sentencing] Commission's policy statement defining 'extraordinary and compelling reasons.'" United States v. Bryant, 996 F.3d 1243, 1247, 1249 (11th Cir.), cert denied, 142 S. Ct. 583 (2021); see also U.S.S.G. § 1B1.13, cmt. 1 (defining "extraordinary and compelling reasons").[2]

"[B]y dint of § 3582(c)(1)(A)'s plain text, a district court may reduce a term of imprisonment if (1) the § 3553(a) sentencing factors favor doing so, (2) there are 'extraordinary and compelling reasons' for doing so, and … (3) doing so wouldn't endanger any person or the community within the meaning of § 1B1.13's policy statement." United States v. Tinker, 14 F.4th 1234, 1237 (11th Cir. 2021). "Because the statute speaks permissively and says that the district court 'may' reduce a defendant's sentence after certain findings and

---

[1] Defendant's motion is properly before the Court because the Warden denied his compassionate release request. (Doc. 171-1 at 9–11.)

[2] Application Notes 1(A) through 1(C) provide that a terminal illness or a serious medical condition, old age, and certain family circumstances qualify as extraordinary and compelling reasons. Application Note 1(D) provides that extraordinary and compelling reasons exist if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." "Application Note 1(D) does not grant discretion to courts to develop 'other reasons' that might justify a reduction in a defendant's sentence." Bryant, 996 F.3d at 1248.

3

considerations, the court's decision is a discretionary one." United States v. Harris, 989 F.3d 908, 911 (11th Cir. 2021).

### A. Extraordinary and Compelling Reasons

Under the applicable policy statement, a defendant's medical condition may qualify as an "extraordinary and compelling reason" to reduce his or her sentence. U.S.S.G. § 1B1.13, cmt. 1(A). The defendant's medical condition is an extraordinary and compelling circumstance if he suffers from "a serious physical or medical condition," "a serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process" "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, cmt. 1(A)(ii).

According to the Centers for Disease Control (CDC), certain medical conditions can increase the risk of severe illness from COVID-19, which are categorized depending on the strength of the evidence supporting a link with severe illness.[3] The medical records reflect that Defendant has at least two conditions for which there is firm evidence of an association with severe COVID-19, those being type 2 diabetes and obesity. (See Doc. 184-1 at 21–23.) Defendant also has hypertension id., for which the CDC reports "mixed

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html.

evidence" of a link with severe cases of COVID-19. Other medical records reflect that Defendant might also have mild liver disease (Doc. 177-1 at 60), and, according to an echocardiogram in March 2020, mild dilation of the left ventricle and mild enlargement of the left atrium (id. at 62–63).

Defendant states that his medical conditions are persistent and continue to put him at "at risk of serious consequences if he were to become re-infected with the coronavirus." (Doc. 184 at 4.) Thus, he contends that "extraordinary and compelling reasons warrant compassionate release." (Id. at 5.) For its part, the government forthrightly acknowledges that "Thompson has a condition that is currently considered an 'extraordinary and compelling' reason for compassionate release." (Doc. 177 at 6.) The government concluded that

> [i]n light of Thompson's unique combination of medical issues of uncontrolled hypertension, Type 2 diabetes, obesity, high cholesterol, dependent pedal edema, liver issues, and potential heart issues, the potential severity of a COVID-19 reinfection due to this unique combination of medical conditions, and the Hagan Order granting compassionate release[4], Thompson's unique combination of medical conditions could possibly qualify him for compassionate release.

(Id. at 11–12.) In the latest round of briefing on the Motion for Compassionate Release, the government did not oppose Defendant's argument that his medical conditions still qualify as "extraordinary and compelling reasons," "rely[ing] on its previous responses submitted to the Court." (Doc. 185 at 1.) Thus, the

---

[4] See United States v. Hagan, No. 3:17-cr-210-BJD-JBT, 2021 WL 1377765 (M.D. Fla. Apr. 12, 2021).

5

government does not contest that Defendant's circumstances are extraordinary and compelling, such that he is eligible for a sentence reduction.

Given Defendant's combination of medical conditions and the government's position, the Court finds that Defendant has established he has a serious medical condition under U.S.S.G. § 1B1.13, cmt. 1(A)(ii). As a result, he has established "extraordinary and compelling reasons" for compassionate release and is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

### B. Lack of Danger to the Community

A court may grant a reduction in sentence only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Under § 3142(g), a court must consider four factors: (1) "the nature and circumstances of the offense charged," including whether the offense involved a controlled substance or a firearm, (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," including family ties, community ties, past conduct and criminal history, and "record concerning appearances at court proceedings," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

The Court has carefully weighed each of these factors and concludes that Defendant is unlikely to pose a danger to the safety of another person or to the

6

community if the Court grants relief. The Court recognizes the serious nature and circumstances of the offense, including that Defendant was responsible for distributing 287.7 grams of crack cocaine during a drug conspiracy, and that he once recruited and gave a gun to a 17-year-old to watch over a drug house, which led to the 17-year-old being assaulted by two visitors. (See Doc. 166 at Presentence Investigation Report (PSR) ¶¶ 11–20.) But Defendant was only 19 years old himself when he committed the crimes, which occurred more than a quarter century ago. And while the mixture of guns and drugs is always serious, there is no evidence Defendant ever discharged a firearm toward anyone.

During his over 25 years in prison, Defendant has incurred only one disciplinary infraction – for possessing morphine and heroin – and that was over 13 years ago. (See Doc. 170-1.) Otherwise, he has maintained a spotless disciplinary record.

Now 47 years old, it seems Defendant has matured. During his time in custody, he has invested in his education and self-improvement, having earned a GED and completed over 1,700 hours of courses and programs. (Doc. 167 at 3; Doc. 167-1.) He has earned commendable work performance evaluations through UNICOR. (Doc. 167-2.) The Court has read Defendant's letter, in which he acknowledges he "made bad choices as a young man" and expresses remorse for the "hurt and pain" he caused people who used crack cocaine. (Doc. 167-3.) He says he is "a different person from that person over 20 years ago" and he

7

wishes to better himself. (Id. at 1.) Defendant accepts responsibility for his actions. He asks for a "second chance" and the opportunity to reconnect with his family, especially his daughters, who are now young adults. (Id.) And Defendant has the support of his family, including his daughter (Doc. 184-2, Letter from Queneidra Thompson) as well as his mother, brother, and aunt (Doc. 167-5, Letters).

The Court believes the likelihood of Defendant committing future crimes is low. To the extent Defendant poses any minimal risk of reoffending, the risk can be mitigated by the conditions of supervised release. After weighing the facts, the parties' arguments, and the factors set out in 18 U.S.C. § 3142(g) (as incorporated into U.S.S.G. § 1B1.13(2)), the Court finds that Defendant is unlikely to be a danger to another person or to the community.

### C. The § 3553(a) Factors

Finally, the Court must consider whether the § 3553(a) factors support a sentence reduction, and if so, how much. See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.[5] In deciding how to exercise its discretion, the Court may consider a

---

[5] The factors the Court considers under § 3553(a) include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence; protect the public; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the guidelines; (5) the Sentencing Commission's relevant policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a).

range of circumstances, including post-sentencing rehabilitation and intervening changes in the law. Cf. Concepcion v. United States, 142 S. Ct. 2389, 2396 (2022) (holding that district courts "may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion."); see also United States v. Kibble, 992 F.3d 326, 335 (4th Cir. 2021) (Gregory, J., concurring) ("Section 3582(c)(1) necessarily envisions that the § 3553(a) factors may balance differently upon a motion for compassionate release than they did at the initial sentencing."). Although intervening, non-retroactive changes in the law cannot support a finding of "extraordinary and compelling reasons," "for those defendants who can show some other 'extraordinary and compelling' reason for a sentencing reduction …, they may ask the district court to consider sentencing law changes … in balancing the § 3553(a) factors." United States v. Jarvis, 999 F.3d 442, 445 (6th Cir. 2021), cert. denied, 142 S. Ct. 760 (2022).

Defendant requests a reduction to time-served based on the time he has already spent in prison and the disparities between his sentence and those of similarly situated defendants being sentenced today. (Doc. 184 at 10.) The United States opposes any reduction based on the nature and circumstances of the offense and Defendant's history and characteristics. (Doc. 174 at 15–18; see also Doc. 192 at 6–7.)

After weighing the parties' arguments and exhibits, as well as the § 3553(a) factors, the Court finds that a reduction is appropriate. One factor that drives the Court's decision is the sheer length of Defendant's sentence and how much time he has already served. His current prison term is 55 years, a relic of mandatory sentencing guidelines and a now-discarded practice in which § 924(c) sentences were "stacked." Defendant was only 19 years old when he committed the offenses and he has been in custody since he was 21. But for a sentence reduction, Defendant would not leave prison until he was almost 70 years old. A lesser sentence is sufficient to accomplish the statutory objectives of sentencing, including the need to provide just punishment and afford adequate deterrence.

Also noteworthy is the disparity between Defendant's sentence and that of a similarly situated defendant being sentenced today. Many things have changed since Defendant was sentenced, but the Court highlights only a couple of those changes here. First, Defendant was sentenced before United States v. Booker, 543 U.S. 220 (2005), when the sentencing guidelines were mandatory. As a result, the sentencing judge had no choice but to sentence Defendant to at least 360 months in prison on Counts One, Five, and Nine (the low end of the guidelines range for these crack cocaine offenses), even though another 25 years would be added to that sentence for Defendant's § 924(c) convictions. Today, a district judge could vary below the guidelines range to account for the

10

mandatory consecutive sentences under § 924(c). See Dean v. United States, 137 S. Ct. 1170, 1176–77 (2017) ("Nothing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) … to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count.").

Additionally, a now-discarded practice called "stacking" dramatically increased Defendant's sentence because of the pair of § 924(c) convictions (Counts Seven and Ten of the indictment). When he was sentenced, a defendant faced a mandatory consecutive penalty of at least five years' imprisonment for his first § 924(c) conviction, plus a mandatory consecutive penalty of at least 20 years for each subsequent § 924(c) conviction, even if the subsequent conviction was obtained in the same prosecution as the first § 924(c) conviction. 18 U.S.C. § 924(c)(1) (1997); Deal v. United States, 508 U.S. 129, 131–32 (1993). As a result, Defendant was subject to a mandatory 25-year sentence for the two § 924(c) convictions, on top of his sentence for the remaining convictions. That was true even though both § 924(c) convictions were obtained for conduct that happened only three days apart. (See Doc. 166 at PSR ¶ 4.) The First Step Act lessened these harsh consequences by limiting the application of stacked sentences to defendants whose second or subsequent violation of § 924(c) "occurs after a prior conviction under this subsection has become final." First Step Act, § 403(a). Were Defendant sentenced today, Counts Seven and Ten would no longer subject him to a mandatory 25-year addition to his sentence. Instead, the

convictions would expose him only to a pair of five-year consecutive terms. See 18 U.S.C. §§ 924(c)(1)(A)(i), (c)(1)(C).

While not contesting that Defendant has established extraordinary and compelling reasons for compassionate release, the government nevertheless argues against early release. The Court has considered the government's arguments against a sentence reduction, in both the context of the compassionate release motion and the Renewed First Step Act Motion, but rejects them. (See Doc. 170 at 8–12; Doc. 174 at 15–18; Doc. 192 at 6–7.) The Court recognizes that Defendant had prior convictions before this case, but Defendant was between 17 and 19 years old when he committed the prior offenses, which are now almost three decades old. (Doc. 166 at PSR ¶¶ 38–43.) He was also only 19 when he committed the current offenses, and he has already spent more than 25 years in prison for them. The government submits Defendant's prison disciplinary record as evidence he does not deserve a sentence reduction (Doc. 170-1), but the Court views that record differently. The disciplinary record shows that Defendant was disciplined one time in 2009 for possessing morphine and heroin. (Id.). While this was a serious breach, it is Defendant's only disciplinary infraction during his 25 years in custody, and the infraction is nearly 13 years old. The government also argues that reducing Defendant's sentence "would create unwarranted disparities because defendants sentenced for non-crack crimes do not have this vehicle [the First

12

Step Act] to challenge their career-offender enhancements under current law." (Doc. 170 at 10). This objection is misplaced because the Court is not reconsidering the career offender enhancement.

During his time in custody, Defendant has earned his GED and completed over 1,700 hours of courses and programs. (Doc. 167 at 3; Doc. 167-1.) He has earned positive work performance evaluations in UNICOR. (Doc. 167-2.) The Court has read Defendant's letter, in which he acknowledges he "made bad choices as a young man," expresses remorse, and expresses a desire to better himself. (Doc. 167-3.) The Court recognizes that Defendant had an upbringing marked by familial and financial hardship and that he became involved with the criminal justice system at a young age. (Doc. 166 at PSR ¶¶ 38, 52–56.) But Defendant accepts responsibility for his actions and does not blame his upbringing. (Doc. 167-3.) Defendant asks for a "second chance" and the opportunity to reconnect with his family, especially his daughters, who are now young adults. (Id.) The Court also has considered Defendant's medical records (Doc. 167-4) and letters supporting Defendant from his mother, brother, aunt, and daughter. (Doc. 167-5; Doc. 184-2).

After carefully considering the nature and circumstances of the offenses and Defendant's history and characteristics, the Court finds that reducing his sentence is warranted. Given that Defendant has now served over 25 years and his serious medical conditions which form the basis of the motion for

13

compassionate release, a reduction to time served plus six months to allow the BOP to implement a release plan is appropriate.[6]

## II. The First Step Act Motion

Defendant's Renewed First Step Act Motion raises challenging questions – chiefly, whether the First Step Act authorizes a district court to reduce a defendant's sentence for "non-covered offenses" if they are grouped with "covered offenses," and whether United States v. Denson, 963 F.3d 1080 (11th Cir. 2020), abrogated in part by Concepcion, 142 S. Ct. 2389, forbids a district court from reducing the sentence for any non-covered offense whatsoever. The Court need not resolve these questions today. Because of the ruling on the § 3582(c)(1)(A) motion, the Court will deny the Renewed First Step Act Motion as moot.

Accordingly, it is hereby **ORDERED:**

1. Defendant Quenton Thompson's Motion for Compassionate Release (Doc. 171), as supplemented (Docs. 176, 184) is **GRANTED** to the extent the Court reduces Defendant's term of imprisonment to **TIME SERVED PLUS SIX MONTHS**. The Court strongly encourages the BOP to aid Mr. Thompson's transition by allowing him to serve the remaining time at a residential reentry center. The terms of supervised release are

---

[6] Defendant's over 25 years in custody is the equivalent of serving a 30-year sentence when the 85% rule (based on the ability to earn good time credits) is taken into account.

14

unchanged. (Doc. 180.)

2. The Renewed Motion to Reduce Sentence Pursuant to the First Step Act of 2018 (Doc. 167) is **DENIED AS MOOT**.

**DONE AND ORDERED** at Jacksonville, Florida this 21st day of November, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:
Counsel of record
Defendant
Warden, Jesup FCI
Bureau of Prisons, Designation and Sentence Computation Center
U.S. Probation Office (Crystal DiLeva)

15